Good morning, Your Honors. Alicia Franklin, Federal Defenders of San Diego, on behalf of Mr. Zuniga-Garcia. Mr. Zuniga-Garcia's conviction should be reversed because the District Court abused its discretion when it applied the wrong legal standards in denying his request for a missing evidence instruction. This standard is for the more stringent sanction of a dismissal of indictment or suppression of a secondary evidence. The correct standard for a missing evidence jury instruction is whether sufficient evidence has been shown for a reasonable jury to find that the government destroyed the evidence in bad faith. Unlike Arturo- What sort of findings are we stuck with here, though? It seems that the District Court made a couple of findings that the evidence wasn't exculpatory, at best it was speculative, and that it wasn't in bad faith. And I think that's the distinction- So it seems to me you're asking us to revisit that, and we went there. No, I think what the distinction between both the government and the District Court's interpretation of the case law, and I think the correct interpretation of the case law, is not simply that we're not saying bad faith and prejudice might be needed, but that the finding of bad faith isn't on the District Court. The finding of bad faith simply for a jury instruction is for the jury. Obviously, if we could submit enough intentionality or bad faith for the District Court to make that finding, then a dismissal of indictment would have been the appropriate sanction. In this circumstance, we're simply saying that we need to provide sufficient evidence of some bad faith and prejudice that a reasonable jury could then make the determination. We weren't asking for a mandatory inference. We weren't asking for a dismissal of indictment. We simply were asking for a permissive inference that if the jury, the ultimate fact finder, found that the government acted in bad faith, they could make the inference that that evidence was potentially exculpable. So what's your best case to say that the court can't make a finding of bad- that can't make those findings in deciding, heard from the officer, all of that, you know, had heard the jury testimony, right, and said, I don't find any bad faith. So is there a case that says that that has to be submitted to the jury? No, I don't. But I think if you look at the case law and the line that have followed in terms of the interpretation of bad faith, I think it is kind of clear in terms of the distinction between when the District Court finds that there's bad faith, enough to support a dismissal, and when while a District Court finds that maybe bad faith hasn't been proven enough to support a dismissal, but that a jury instruction is still appropriate. And I think Youngblood's a great example of that. That even though the Supreme Court found that reversal of the conviction wasn't appropriate because there wasn't sufficient bad faith proof, that it was still appropriate that there was a permissive inference jury instruction, and that was something that was appropriate in that case. I guess I'm having trouble seeing what is exculpatory about the tools in the pictures, in that if you look at, all right, it seems to be undisputed that he's got this bolt in his pocket. And how it got in his, he had two trials, right? Yes. The first trial he didn't testify. Yes. And it was a hung jury. The second trial he testified and he was convicted. Am I correct? Yes. And his story about the bolt had something to do with he got it from his child, put it in his pocket. Yes. So even by virtue of his own testimony, it would seem that what his defense was that he got it from his child, and somehow that had to do with when, that the people that had his car and put that, his whole defense. So what do the tools have to do with anything? If it did go to his tool, what does that, it seems to me the crux of it, that what they said was inculpatory was that that tool could be used for the gas tank modification. So wouldn't it be inculpatory if it came from his tools as opposed to exculpatory? No, I think that. Because he's trying to, his whole defense was I got it from my child, my child must have got it from the people that were working on the car. And so I'm having a, I'm having the same problem the district court was saying. To me it seems like had I been the prosecutor, if I had the tools and could show it came from there, that would be another way I'd impeach him and put another nail in his coffin. I actually think that the inference that was made is that it wasn't from his tools and that there wasn't another non-inculpatory reason for why he had the bolt in his pocket. I think if it could be used on the tank, regardless of where it came from, how does that help him? I think it helps him because the testimony I presented in both trials was that prior to him, his movement for admission at the port of entry that evening, he had been doing construction work. And in the second trial his former father-in-law testified that he was doing scaffolding. He was using an air compressor. He was using an air hose. What I think that showing those tools, the ladder, the scaffolding, the air hose, the air compressor, it provides an alternative theory, not that he was using that for his tools to put it on the gas tank, but that it was reasonable that he didn't know and that he had been set up because he thought there was a completely non-inculpatory reason for having the bolt in his pocket. He really didn't think that, you know, oh, I found this bolt, you know, my son gave me this bolt, and it's from my air compressor, air hose. I don't think there's an inference that the tools was that he used those tools. But how does that make that tool not fit for the use that was bad for him? Well, I think that when you look at the mass destruction of the tools, in addition to simply the tools, the bolts that were actually on the gas tank that would have allowed us to argue with the government's inference of center, to be able to say, you know, this isn't proof of knowledge, this isn't proof of guilt, because look at the bolts that were actually on the gas tank. Look at the other items that were actually in the glove compartment. I think that while there was touch. The glue? The glue. Why did the glue help him out? Well, it was unsealed. There was no, I don't think there was anything with that type of glue had been used. Because hadn't that type of glue been used on the gas tank? Based on the government's witness. I think that while we can say to the jury, yes, there were tools in the car, yes, there were items, I think that both his ability to present a fair defense was inhibited by the fact that looking at saying, oh, yes, there's some tools, and showing that it wasn't just a bolt and epoxy in this truck. Those weren't simply the things that were there. This was a very alive tool. Did the officer deny that there were tools in the car? Were you able to elicit that testimony? No, he doesn't deny that there were tools in the car. So all that came in anyway. Okay. So how would the actual tools have helped you? Because I think it would have allowed him to actually show that this bolt could fit on the air compressor, that it could fit on the air hose. But it still also fits on the gas tank, so what good does that do him? It does fit on the gas tank, but I think that because it was in the gas tank and it was in his pocket, that was the inference that was made by the government, oh, you know what, what a coincidence. Yes, there's other tools, but what a coincidence. And I think that his ability to show. But didn't he say he got it from his child? He did, and he showed that it was part of his tools. And I think that at the end of the day, you know, I think that the point in the distinction between either a request of a sanction for dismissal of indictment and simply a mere jury instruction is the jury could have made that finding. We're not asking the judge to order a dismissal or to order the judge to find it. You're saying that it may not rise to the level of a constitutional due process violation, but that still doesn't excuse the failure of the district court to give the instruction about the evidence. And then I think that, you know, whether or not the district court believed that there was bad faith, that wasn't his decision to make in this circumstance. If you're not going to argue that it's a violation of constitutional due process, is there a requirement that you prove a bad faith to get the instruction? It's our position that you shouldn't have to, but under the current case law in this circuit, bad faith is a prerequisite under Arturo and Janelle. So how do we deal with your position on that, then? I think that there can be circumstances in which a defendant can't show bad faith, but that the destruction of the evidence is so widespread. But if the law requires bad faith, how do we follow your desire that it doesn't require bad faith? Well, it's our position that it doesn't follow bad faith. But we will say that even under the current legal standard of bad faith, that we have made the sufficient finding for it even to just request the jury instruction. And that, you know, whether or not the district court believed that there was bad faith or not, I think there was sufficient evidence in showing that this was enough to at least get the jury instruction and to allow the jury to make that decision. They may not have made that inference. They may not. But I think that at the end, he had the right to at least have this jury instruction. Are you arguing that they destroyed the – well, they were aware of the potential exculpatory effect because when they discovered the vault, he said that it – he gave a non-exculpatory explanation for the vault being there. And then after that, they destroyed all the evidence. Yes. I think that, you know, the district court's focus was on intentionality or malfeasance. But I think that when we look at Loud Hawk and other cases, there's a lot of different factors for a court to consider in terms of bad faith by the government. I think whether or not the evidence was lost or destroyed while it was in their custody, whether they were on notice, and whether they acted in disregard for the interests of the accused. At this – at the time this evidence was destroyed, Mr. Geneva Garcia was placed under arrest. Drugs had been found in his gas tank. Prosecution had been authorized. So the agents who were agents of the federal government – this isn't a case like Janelle where there's a, you know, LAPD and that, you know, the onus cannot be put on the government. This was their federal agents, their special agent who investigated him after his arrest that testified at trial. He was in the control and under arrest. Prosecution had been authorized. And he had made that potentially – that statement that, you know, he thought this belonged to their tools. So they were on notice. And for them to just disregard that this was an investigation, a drug investigation, and that his interests should be protected, I think is bad faith in this case. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, Aaron Clark for the United States. The first thing that is apparently clear at this point now that wasn't clear in the briefing was that in looking as to whether this adverse inference instruction should be given, the Court should be reviewing this under an abuse of discretion standard. I think counsel has basically conceded that at this point. Counsel is now saying that the district court applied the wrong legal standard and that there wasn't sufficient – there was sufficient evidence that it should go to the jury as to whether or not there was bad faith. And in making that argument, counsel is asking this Court to overturn what is now 22 years – almost 20 years of precedent since 1985 – more like 27 years of precedent since 1985 in Arturo and Janelle, both of which showed or held that bad faith and prejudice need to be shown for an adverse inference instruction to be given. Well, is the judge – does it follow from there that it has to be a matter of law determination by the judge? Or I think what I'm understanding counsel for appellant to argue is, okay, we put on evidence that the Bolt – you know, he put testimony on that the Bolt was from one of his tools and that those tools were not preserved, and photographs are normally taken on a floppy disk, but in this case the photographs are missing as well. And so it seems to me that they're basically saying, well, yeah, maybe the jury wouldn't have believed it, but there was some evidence of they didn't – you know, that the normal procedures weren't followed, it wasn't preserved, and it had some relevance to the trial. So why can't the jury just hear the instruction and decide whether there was bad faith? I mean, here the Court made a determination as a matter of law that there wasn't bad faith and that it wasn't exculpatory. At best it was speculative. Well, Your Honor, under our tarot and Janelle, it's the district court that makes the determination as to whether or not there's bad faith and whether or not that instruction should be given. And the Court obviously – if the Court had adopted the standard, it would have been going outside Ninth Circuit case law on the issue to decide, well, this is an issue for the jury. Could we review the findings of fact that the district court made for clear error? Yes, Your Honor. The findings of fact are reviewed for clear error. Okay. So one of the findings was that it wasn't apparent that these parts, bolts, and other items would have evidentiary value. Yes. Yet immediately upon discovery of the bolt, the defendant said to the agent – I can't remember exactly what he said. He said something that had – He said, I think this belongs to one of my tools. Right. I think this belongs to one of my tools. So had he had – okay. And then after that, what I guess I find troubling is that all the evidence that could help in the prosecution of this case was preserved. The bolt, absent anything around, so you can't know anything about the bolt in context, and the epoxy glue, which hadn't been opened, that was preserved just fine. But anything else that could have gone to support the defendant's defense was destroyed, and it was destroyed contrary to the ordinary practices that were employed by these agents. Well, Your Honor, I think we disagree on a few things. First of all, it needs to be understood that at the point that we find the bolt in his pocket and he says, I think this belongs to one of my tools, there is nothing in the record that suggests that we knew at that point that it had evidentiary value. It was just an item that had been found. Well, when did you find out it had evidentiary value? I mean, you made a big thing out of the bolt during the case. Your Honor, we found out about its evidentiary value in March, which was five months later, when we tested the bolt on the fuel tank strap. When was the rest of the materials destroyed, the rest of the evidence? It's not clear from the record. So why did the bolt emerge unscathed, not destroyed? Because the bolt was found on his purse, Your Honor. It was one of the items found in his purse. But the glue wasn't, and that was preserved. The glue was found in the truck. That's correct, Your Honor, and that's because it was apparent as soon as we saw the gas tank that there was epoxy dripping down the side of the gas tank, and this was a tube of unopened epoxy. So the value of the epoxy. Opened epoxy. If the epoxy that is dripping had to have been opened, right? Yes, Your Honor, but, of course, once the marijuana is taken out, the gas tank is going to have to be resealed somehow. Can I just ask you, is it your practice to destroy the contents of a car when you seize a car? It's the normal practice, Your Honor, when a number of items like that are seized, that they are retained and then a letter is submitted to the defendant, and then if that letter is not responded to saying, We have your stuff, then those items are generally destroyed. Yes? Was that practice followed here? The record is not clear on whether that practice. I think the record is clear that it was not followed here. I don't agree, Your Honor. There's nothing in the record. Where is all the evidence? Where's the letter? I don't have the letter, Your Honor. The letter would have been sent to defense counsel, and I'm assuming that it would have been. And you wouldn't have a copy of it? You wouldn't have a copy? It wouldn't be on your computer? No, Your Honor. You wouldn't have filed that to show that you complied with the procedures that you're supposed to comply with? I don't send the letter, Your Honor. Well, the agents. It would have helped your case to have the letter to demonstrate that you complied with the procedures, right? Yes, Your Honor, it would have. It would have. Right. Or to have the evidence, which you don't have. Yes. We don't have the tools, Your Honor. And I'm not happy that we don't have the tools. I'm sure you're not, because I think that there's a serious problem with what the government did in this case. Well, if the court finds that there's a serious problem, we still have to get to whether or not we've done anything. All they asked for was a jury instruction that would permit the jury to draw an adverse inference. They did not move to dismiss the indictment or to suppress the other evidence, which maybe they could if they had more information about what the agents actually did and why. But they didn't. They just asked for an instruction that would allow the jury to draw adverse inferences because they did not have the evidence in front of them. Well, Your Honor, the instruction they proposed didn't just allow them to draw adverse inferences. It suggested that they draw adverse inferences. It said you may and you could. Yes. That's the language. It's saying, yes, you're allowed to draw an adverse inference. I'm not saying you are compelled to draw an adverse inference. Yes, Your Honor. Pretty innocuous. I would not characterize it as innocuous. You certainly used the vault a lot in your closing argument. Were you the trial lawyer? I was, Your Honor. And I wouldn't say that I used it a lot. Well, you said in your closing argument that is why he had a vault in his pocket. Then you say later in the closing argument this vault had no business being in anyone's pocket without a reason. Yes. It was in the defendant's pocket. Yes, I did, Your Honor. And when it came to rebuttal, though, I got up and told them. Because in rebuttal, the defense counsel had taken the vault and put it in front of the jury and said this is the government's case. And I got up immediately after and said this is not the government's case. And to say that the government's case rests on the vault is ignoring the gas tank that was sitting behind them. That's right. You also, of course, had the evidence of what was in the gas tank, of course. But you didn't rest on what was in the gas tank. You explained the vault. You mentioned the vault at least twice in your closing argument. And he had an answer, which may not have been a very good one, but he was deprived of the opportunity of showing that there was a reason someone might have had a vault. Now, you certainly could have argued that's a made-up story. What does that have to do with his son having the vault? But what he wanted to present was that he had a reason for the vault because the vault was one of his tools. And he was deprived of the ability to make that argument because, for some reason, all his tools were destroyed. It doesn't make any sense to me. We have enough trouble with the cases where you send the witnesses back to Mexico. I mean, we heard one of those, I think, last month. But to destroy the evidence, which you knew was that he was relying on, he told the officer that. You know, I just don't understand it. You know, I don't understand why you didn't have enough to convict him. Now, of course, the fact is it didn't work at the first trial. But, you know, making something out of the vault when you had destroyed his story, that it fit a tool, it certainly bothers him. I understand the court's point, Your Honor. Again, I think it's worth noting that we did not know at the time that we had the vault that the tools were in any way material or relevant to his defense. We didn't know that the vault fit the gas tank. He said it fit the tools. Yes, but we didn't know that the vault had any evidentiary value until five months later in March. And by that time, the tools had been destroyed. How could you not have known if he told you the vault fit the tools? Your Honor, he told us the vault fit the tools, but we didn't know that the vault had any value to us until five months later when we found that it fit the tools. But why did you preserve it all that time then? Why didn't you just destroy it with everything else? Because it was found on his person. So what? So we retained everything that was found on his person. But the glue wasn't found on his person, so that's not an adequate answer. Again, Your Honor, the value of the glue was evident at the time of his arrest because we found the epoxy on the gas tank. The value of the vault was not evident at the time of his arrest. It wasn't evident until five months later. I see that my time is up. The court has no further questions. Thank you very much. Thank you. Case is arguably submitted. Next case on the calendar. Next case is United States versus Soto Lopez.
judges: Reinhardt, Wardlaw, Callahan